UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cutsforth, Inc.,<br><br>        Plaintiff,<br><br>v.<br><br>LEMM Liquidating Company, LLC, f/k/a Fulmer Company, LLC, Westinghouse Air Brake Technologies Corporation, and Motivepower, Inc.,<br><br>        Defendants. | Case No. 12-cv-1200 (SRN/JSM)<br><br>**MEMORANDUM OPINION AND ORDER** |

Joseph A. Herriges, Mathias W. Samuel, and Michael J. Pape, Fish & Richardson PC, 60 South Sixth Street, Suite 3200, Minneapolis, Minnesota 55402, for Plaintiff.

Alan L. Barry and Jason A. Engel, K & L Gates LLP, 70 West Madison Street, Suite 3100, Chicago, Illinois 60602, and Robert D. Brownson and Jessie Erin Rosenthal Mischke, Brownson & Ballou, PLLP, 225 South Sixth Street, Suite 4800, Minneapolis, MN 55402.

SUSAN RICHARD NELSON, United States District Judge

      This matter is before the Court on Plaintiff Cutsforth, Inc.'s Motion to Dismiss Defendants LEMM Liquidating Company, LLC (f/k/a Fulmer Company, LLC) ("Fulmer"), Westinghouse Air Brake Technologies Corporation ("Wabtec"), and MotivePower, Inc.'s ("MotivePower") (collectively, "Defendants") Inequitable Conduct Counterclaims and Motion to Strike Defendants' Inequitable Conduct Affirmative Defenses. [Doc. No. 53.] For the reasons set forth below, the Court denies Cutsforth's Motions.

1

I.  **BACKGROUND**

On January 31, 2007, Cutsforth filed a complaint in federal district court in Minnesota against Fulmer (the "2007 Litigation"), alleging that Fulmer infringed on two Cutsforth patents: U.S. Patent Nos. 7,141,906 (the "'906 Patent") and 7,122,935 (the "'935 Patent"). (Counterclaim ¶ 21 [Doc. No. 47].)[1] The challenged Patents relate to brush holder apparatuses and assemblies. (See ¶ 10.) David and Robert Cutsforth are the named inventors on both patents. (Id. ¶ 7.) The Cutsforths "assigned their rights in the '906 and '935 Patents to Cutsforth on or about January 10, 2003." (Id. ¶ 8.)

Around March 27, 2007, Fulmer advised Cutsforth that its products "did not infringe any claims[2] of the '906 and '935 Patents and that these patents were invalid over prior art."[3]

---

[1] Defendants Fulmer, Wabtec, and MotivePower each filed separate Answers and Counterclaims in this action. [Doc. Nos. 47–49.] Because the inequitable conduct allegations in each of the Defendants' Answers and Counterclaims are substantially identical, the Court will cite to Defendant Fulmer's Answer and Counterclaim [Doc. No. 47] by way of example. (See Defs.' Opp'n Mem. at 10 n.1 [Doc. No. 59] (noting that each Defendants' Answer and Counterclaim are "substantially identical" and referring only to Defendant Fulmer's Answer and Counterclaim throughout the memorandum).)

[2] A "patent claim" is a "formal statement describing the novel features of an invention and defining the scope of the patent's protection." Black's Law Dictionary (9th ed. 2009). A "claim limitation" is "a statement that describes the means for performing a specified function without reciting the structure, materials, or acts that support that function. Claim limitations define the invention by distinguishing it from prior art." Id.

[3] "Prior Art" means "[k]nowledge that is publicly known, used by others, or available on the date of invention to a person of ordinary skill in an art, including what would be obvious from that knowledge. Prior art includes (1) information in applications for previously patented inventions; (2) information that was published more than one year before a patent application is filed; and (3) information in other patent applications and inventor's certificates filed more than a year before the application is filed. The [USPTO] and courts analyze prior art before deciding the patentability of a comparable invention." Id.

(Id. ¶ 28.) On June 26, 2007, Fulmer participated in a settlement conference with Cutsforth and presented Cutsforth with "invalidity claim charts demonstrating how the claims of Cutsforth's '906 and '935 Patents were invalid in view of the prior art." (Id. ¶ 29.) During the meeting, Cutsforth's counsel "asked to see copies of the prior art references cited in the invalidity charts." (Id. ¶ 30.) On June 30, 2007, Fulmer's counsel emailed Cutsforth's counsel the prior art U.S. Patent Nos. 3,864,803 ("Ohmstedt"), 3,432,708 ("Bissett"), and 3,387,155 ("Krulls I")." (Id. ¶ 31.) Fulmer's counsel emailed Cutsforth's counsel again on July 2, 2007, with copies of the "invalidity claim charts reviewed during the June 26, 2007 meeting," and another patent that Fulmer claimed was relevant to the patentability of the '906 and '935 Patents—U.S. Patent No. 3,710,478 ("Krulls II"). (Id. ¶ 32.)

On August 3, 2007, Cutsforth voluntarily dismissed its complaint of patent infringement against Fulmer. (See Cutsforth Prods., Inc. v. Fulmer Co., No. 07-cv-00660 (PJS/RLE) (D. Minn. 2007), [Doc. No. 11].) While Fulmer filed a Motion to Dismiss or in the alternative a Motion to Transfer Venue in the 2007 Litigation, Fulmer never answered the complaint, the parties never submitted a proposed scheduling order to the Court, and the Court never held a Rule 16 Conference. (See id.)

Before the 2007 Litigation, Cutsforth submitted an application to the United States Patent and Trademark Office ("USPTO") for U.S. Patent No. 7,417,354 (the "'354 Patent"), which "shares common specifications and figures with the '935 and '906 Patents." (Countercl. ¶ 35, 39–41 [Doc. No. 47].) The '354 Patent was pending before the USPTO during the entirety of the 2007 Litigation. (Id. ¶ 41.) Defendants allege that "[t]he USPTO

3

issued a Notice of Allowance[4] for the '354 Patent on July 12, 2007, approximately ten days after Fulmer sent its invalidity claim charts to Cutsforth in the 2007 Litigation." (Id. ¶ 42.) "On October 12, 2007, instead of paying the Issue Fee[5] for the '354 Patent, Cutsforth filed a Request of Continued Examination[6] to reopen prosecution" and filed an "Information Disclosure Statement[7] disclosing the Ohmstedt, Bissett, Krulls I, and Krulls II prior art references to the USPTO." (Id. ¶ 43) (see also Herriges Decl. ¶¶ 4, Ex. C [Doc. No. 56] (providing excerpts from the file history of the '354 Patent.) Defendant alleges that "Cutsforth's Information Disclosure Statement did not disclose to the USPTO the existence of the 2007 Litigation" or "the invalidity claim charts disclosed by Fulmer during the 2007 Litigation." (Id. ¶ 44, 47.) The '354 Patent issued on August 26, 2008. (Id. ¶ 48.)

After the voluntary dismissal of the 2007 Litigation, Cutsforth submitted an application to the USPTO for U.S. Patent No. 7,990,018 (the "'018 Patent") and U.S. Patent

---

[4] A "Notice of Allowance" is "[t]he formal notification from the [USPTO] that a patent application has been approved and that a patent can be issued. The patent itself is not issued until the applicant has paid the issue fee." Id.

[5] An "Issue Fee" is "[t]he charge that an inventor must pay the [USPTO] before an allowed patent application can be issued as a patent." Id.

[6] A "Request for Continued Examination" is a "means of negating the final action on a patent so that the applicant can file amendments, new claims, etc. to show that the invention is patentable as of the original application date. Unlike a continuation application, a request for continued examination keeps a patent alive as if no final decision had been made. It allows prosecution of claims that have been rejected in a final office action to continue." Id.

[7] An "Information Disclosure Statement" is a "document submitted in the patent-application process in which the inventor reveals all known relevant prior art during the patentability search. The statement must disclose all known patents, publications, and other references of prior art. The [USPTO] provides a form, 'Information Disclosure Citation,' for this purpose." Id.

No. 8,179,014 (the "'014 Patent"), which were also "related to and claim priority to the same patent family as the '906 and '935 Patents." (Id. ¶¶ 35, 49.) "During the prosecution of the '018 and '014 Patents, Cutsforth filed Information Disclosure Statements which included the Ohmstedt, Bissett, Krulls I, and Krulls II prior art references." (Id. ¶ 49); (see also Herriges Decl. ¶¶ 5–6, Exs. D–E [Doc. No. 56] (providing excerpts from the file history of the '018 and '014 Patents.) Defendants allege, however, that "Cutsforth did not alert the USPTO to the existence of the 2007 Litigation or disclose the invalidity claim charts from the 2007 Litigation." (Id. ¶ 50.) The '018 Patent issued on August 2, 2011 and the '014 Patent issued on May 15, 2012. (Answer ¶¶ 45, 67 [Doc. No. 47].)

Cutsforth filed the present action on May 17, 2012, alleging patent infringement against Defendants. (Original Compl. [Doc. No. 1].) In addition to infringing the '906 and '935 Patents, which were the subject of the 2007 Litigation, Cutsforth asserts that Defendants also infringed the '354, '018, and '014 Patents. (See Second Am. Compl. ¶¶ 24–71 [Doc. No. 45].) On October 9, 2012, Defendants filed Answers and Counterclaims to Cutsforth's Second Amended Complaint alleging inequitable conduct affirmative defenses and counterclaims relating to the '354, '018, and '014 Patents. [Doc. Nos. 47–49.]

Defendants allege that "Cutsforth, including Robert and David Cutsforth, committed inequitable conduct by failing to notify the USPTO about the 2007 Litigation between Cutsforth and Fulmer, and by failing to disclose the invalidity claim charts from the 2007 Litigation." (Countercl. ¶ 78 [Doc. No. 47].) Defendants allege that the "Cutsforths' withholding of information about the 2007 Litigation constitutes deception intended to mislead the USPTO." (Id. ¶ 93.) Defendants also contend that the "claim charts provide

5

detailed arguments regarding the invalidity of the '906 and '935 Patents" and that the "Cutsforths hid those arguments from the USPTO by not submitting the invalidity claim charts from the 2007 Litigation during prosecution of the '354, '018, and '014 Patents." (Id. ¶ 86.) Defendants argue that Cutsforth withheld the information "in hopes that the USPTO would issue patents with file histories that would include the prior art from the claim charts and that the USPTO would issue the patents without realizing the detailed arguments included in the 2007 Litigation and the invalidity claim charts from the 2007 Litigation." (Id. ¶ 97.)

On October 26, 2012, Cutsforth filed a Motion to Dismiss Defendants' Inequitable Conduct Counterclaims and a Motion to Strike Defendants' Inequitable Conduct Affirmative Defenses. [Doc. No. 53.] The Court heard argument on the Motions on January 15, 2013, and took the Motions under advisement. [Doc. No. 69.]

II. DISCUSSION

A. Standard of Review

Although this is a patent case, the Court applies the Eighth Circuit's procedural standards. See Exergen Corp. v. Wal–Mart Stores, Inc., 575 F.3d 1312, 1318 (Fed.Cir. 2009) (regional circuit law applies to procedural issues that are not specific to patent law). Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); accord Ossman v. Diana Corp., 825 F. Supp. 870,

879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

A pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 670 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because this form of relief is considered an "extreme measure," motions under Rule 12(f) are infrequently granted. E.E.O.C. v. Product Fabricators, Inc., 873 F. Supp. 2d 1093, 1097 (D. Minn. 2012) (citing Stanbury Law Firm, P.A. v. Internal Revenue Serv., 221 F.3d 1059, 1063 (8th Cir. 2000); Daigle v. Ford Motor Co., 713 F. Supp. 2d 822, 830 (D. Minn. 2010)). Under the permissive language of the rule, however, the Court has "liberal discretion" to strike, Stanbury, 221 F.3d at 1063, and a motion to strike should be granted "if the result is

to make a trial less complicated or otherwise streamline the ultimate resolution of the action." Daigle, 713 F. Supp. 2d at 830.[8]

### B. Inequitable Conduct

Defendants' Counterclaim for a declaratory judgment contends that the '354, '018, and '014 Patents are "unenforceable due to Cutsforth's inequitable conduct." (Countercl. ¶ 77 [Doc. No. 47].) "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense, Inc. v. Becton Dickinson & Co., 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [USPTO], which includes a duty to disclose to the [USPTO] all information known to that individual to be material to patentability . . . ." 37 C.F.R. § 1.56(a); see also Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 488 F.3d 982, 999 (Fed. Cir. 2007). "A breach of this duty—including affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information—coupled with an intent to deceive, constitutes inequitable conduct." Honeywell, 488 F.3d at 999.

---

[8] With respect to Defendants' Counterclaims for inequitable conduct, Cutsforth has moved to dismiss under Rule 12(b)(6) for failure to state a claim. (Pl.'s Mem. in Supp. of Mot. to Dismiss at 4 n.2 [Doc. No. 55].) With respect to Defendants' affirmative defenses based on inequitable conduct, Cutsforth has moved to strike under Rule 12(f). (Id.) Because Cutsforth requests that the Court grant its Motion to Strike for the same reasons as its Motion to Dismiss, the Court will review both motions under the Rule 12(b)(6) standard. (Id.) (stating that Cutsforth is requesting the Court strike Defendants' affirmative defense of inequitable conduct "for the same reasons as its Rule 12(b)(6) motion"); see also Product Fabricators, 873 F. Supp. at 1097 (noting that a motion to strike "closely resembles a motion to dismiss in that all well pled allegations in the affirmative defense must be accepted as true and the Court must find that the defense at issue is legally insufficient").

8

To properly allege a counterclaim for inequitable conduct, the movant must allege that: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the [USPTO]." Exergen, 575 F.3d at 1327 n.3 (citations omitted). Although inequitable conduct is a "broader concept than fraud," it is well-established that a party must plead inequitable conduct with particularity under Rule 9(b). See id. at 1326–27 (citations omitted). "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." Id. at 1326–27.

In Exergen, the Federal Circuit articulated the substantive pleading requirements for inequitable conduct claims. Id. Similar to fraud cases, a pleading for inequitable conduct must set forth the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Id. at 1327 (citation omitted). The party asserting inequitable conduct may aver knowledge and intent generally, nevertheless, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the [USPTO]." Id. at 1328–29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." Id. at 1329, n.5 (citations omitted).

Almost two years after Exergen, the Federal Circuit decided Therasense which tightened the proof requirements with respect to the materiality and intent elements of an inequitable conduct claim. 649 F.3d at 1285; see also 1st Media, LLC v. Elec. Arts, Inc., 694 F.3d 1367, 1372 (Fed. Cir. 2012). Therasense did not address inequitable conduct claims at the pleading stage nor did it override Exergen's pleading requirements. See Delano Farms Co. v. California Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed. Cir. 2011). Instead, Therasense clarified that district courts may no longer assess allegations of materiality by the "reasonable examiner" or USPTO Rule 56 standards. 649 F.3d at 1291–94. Instead, "in assessing the materiality of a withheld reference," the Court must determine whether there are sufficient allegations from which it may reasonably infer that "the [USPTO] would not have allowed the claim if it had been aware of the undisclosed reference." Id. at 1291  Further, Therasense reaffirmed that district courts "may not infer intent solely from materiality." Id. at 1290 ("A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa.").[9]

---

[9]  Although Therasense has heightened the standards for inequitable conduct on the merits, it does not specifically address the pleading stage. District courts are currently conflicted on the effect of the Federal Circuit's holding in Therasense on the pleading requirements for the specific intent to deceive element. Compare Hansen Mfg. Corp. v. Enduro Sys., Inc., No. 11–cv–4030, 2011 WL 5526627, at *4 (D.S.D. Nov. 14, 2011) ("Therasense tightened the standard for pleading so that specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence.") (citation omitted) and Quest Software, Inc. v. Centrify Corp., No. 2:10–cv–859, 2011 WL 5508820, at *2–3 (D. Utah Nov. 9, 2011) (same) with Wyeth Holdings Corp. v. Sandoz, Inc., No. 09–cv–955–LPS–CJB, 2012 WL 600715, at *7 (D. Del. Feb. 3, 2012) (determining that "the claimant need only allege facts from which the Court could reasonably infer that the patent applicant made a deliberate decision to deceive the PTO")

The high standards for pleading, as well as proving inequitable conduct are designed to curb overuse of the inequitable conduct doctrine, thereby protecting the reputations of those who would be harmed by such charges.  Further, the law is designed to prevent the use of inequitable conduct as a litigation tactic and shields the courts, patent system, and public from the burden created when such claims are brought on slender grounds.  See Exergen, 575 F.3d at 1331 (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997) ("[T]he goals of Rule 9(b) . . . include the deterrence of frivolous litigation based on accusations that could hurt the reputations of those being attacked."));  Therasense, 649 F.3d at 1288 (discussing undesired consequences stemming from the routine charging of inequitable conduct).

Defendants argue that Cutsforth committed inequitable conduct by failing to disclose the 2007 Litigation and the claim charts Fulmer provided to Cutsforth during the 2007 Litigation to the USPTO.  (Defs.' Opp'n Mem. at 11 [Doc. No. 59].)  Defendants assert that the 2007 Litigation and the claim charts were material information because the Manual of Patent Examining Procedure ("MPEP") § 2001.06(c) requires that "[w]here the subject

---

(emphasis in original) and Aeveo Corp. v. AE Tech Co., Ltd., No. 2:12-cv-00053, 2013 WL 876036, at *10 (D. Nev. Mar. 7, 2013) (same).

    In a post-Therasense opinion, the Federal Circuit stated that to survive a motion to dismiss, an inequitable conduct counterclaim simply must recite "facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the [USPTO] and withheld that information with a specific intent to deceive the [USPTO]."  Delano Farms, 655 F.3d at 1350 (citing Exergen, 575 F.3d at 1318, 1330).  Thus, this Court will follow the Delano court's recitation of the Exergen standard, without any modification for the Therasense requirements, as it is binding precedent on this Court.

matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom" must be brought to the USPTO's attention.[10] Under this standard, Defendants contend that had the USPTO known about the 2007 Litigation and the claim charts, it would have discovered "information related to validity that was exchanged between Cutsforth and Fulmer." (Id. at 12.)

Defendants cite two Federal Circuit opinions to argue that the 2007 Litigation and the claims charts were material information that should have been disclosed to the USPTO. They first rely on Nilssen v. Osram Sylvania, Inc., where an inventor and exclusive licensee brought an action against a competitor alleging infringement of patents relating to compact florescent light bulbs and to ballasts for gas discharge lamps. 504 F.3d 1223, 1227 (Fed. Cir. 2007). After a bench trial, the district court held that the patents were unenforceable due to inequitable conduct, in part because the plaintiff had failed to disclose litigation

---

[10] The full text of the relevant part of MPEP § 2001.06(c) provides as follows:

> Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the U.S. Patent and Trademark Office. Examples of such material information include evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of "fraud," "inequitable conduct," and "violation of duty of disclosure." Another example of such material information is any assertion that is made during litigation which is contradictory to assertions made to the examiner. Environ Prods., Inc. v. Total Containment, Inc., 43 USPQ2d 1288, 1291 (E.D. Pa. 1997). Such information might arise during litigation in, for example, pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony.

related to the same subject matter. Id. at 1227–28, 1234. The Federal Circuit affirmed, holding that the district court did not abuse its discretion in holding the patents unenforceable for inequitable conduct based on the plaintiff's failure to disclose the related litigation. Id. at 1234. The court noted that "[i]t is clear from the language of [MPEP] § 2001.06(c) that the existence of the litigation itself is material information that an examiner needs to have." Id. The court also stated that such information "is important because it signals to the examiner that other material information relevant to patentability may become available through the litigation proceeding." Id. (emphasis supplied).

Additionally, Defendants rely on Leviton Mfg. Co. v. Universal Security Instruments, Inc., where a patentee brought an infringement action against a competitor alleging infringement of a patent involving ground-fault circuit interpreter technology. 606 F.3d 1353, 1356 (Fed. Cir. 2010). The defendant claimed the patents-in-suit were unenforceable due to inequitable conduct and the district court agreed, in part based on the patentee's failure to disclose related litigation to the USPTO. Id. at 1362. The defendant identified twelve cases filed before the patent-in-suit was issued involving its parent patents. Id. The patentee did not dispute that the parent patents were subject to twelve lawsuits or that he was aware of those cases, but instead argued that "the fact [he] succeeded on the validity of those patents shows that those litigations were not material." Id. The Federal Circuit found that the patentee "should have disclosed the existence of the cases themselves and material information from those cases, not just the invalidating prior art." Id. (emphasis supplied). The court stated that "[t]he failure to disclose such litigations normally would be material, and we conclude that they are material here." Id. Therefore, according

13

to Defendants, under MPEP § 2001.06(c), Nilssen, and Leviton, the mere existence of related litigation is material information that Cutsforth was required to disclose to the USPTO.

Cutsforth responds that to the extent Nilssen and Leviton hold that the existence of related litigation by itself is sufficient to support a claim of inequitable conduct, that theory has now been rejected by the Federal Circuit in Outside the Box Innovations, LLC v. Travel Caddy, Inc. 695 F.3d 1285, 1290–92 (Fed. Cir. 2012). In Travel Caddy, a competitor brought a declaratory judgment action against a patentee for the patentee's patented tool carry cases, seeking a finding that its own tool carry cases did not infringe. Id. at 1289. The district court found the patents-in-suit to be unenforceable based on inequitable conduct because the patentee "did not disclose to the [USPTO] the existence of the litigation on [the parent patent] during prosecution of the [patent-in-suit]" as required by MPEP § 2001.06(c). Id. at 1290. The district court stated that, although only infringement of the parent patent had been placed in issue in the prior litigation, "it was clear that the issue of validity would likely arise in the litigation." Id. at 1290.

The Federal Circuit reversed, holding that it was not the existence of related litigation that is material to patentability, but allegations of invalidity that are alleged during that litigation. Id. at 1291. Indeed, the court noted that "[n]o ground of invalidity was included in the complaint against the [parent patent], or communicated informally." Id. The court stated that "[a]lthough a later challenge to the validity of the [parent patent] was surely possible, it did not then exist." Id. Therefore, the court concluded that "there was not clear and convincing evidence of withholding of information material to patentability of the

14

claims in the [patent-in-suit's] application during the pendency of that application." Id.

In this case, Defendants have alleged that during the prosecution of '354, '018, and '014 Patents, Cutsforth failed to disclose to the USPTO that the potential invalidity of the related '906 and '935 Patents had been asserted in the 2007 Litigation. Defendants' allegations are sufficient to state a claim under MPEP § 2001.06(c), Nilssen, Leviton, and Travel Caddy. MPEP § 2001.06(c) requires that "the existence of such [related] litigation and any other material information arising therefrom" to be brought to the attention of the USPTO. Additionally, MPEP § 2001.06(c) specifically provides that "[a]t a minimum," the applicant call to the attention to the USPTO "the existence and the nature of any allegations relating to validity." See also Nilssen, 504 F.3d at 1227 (requiring disclosure of prior litigation under MPEP § 2001.06(c)); Leviton, 606 F.3d at 1356 (finding inequitable conduct when the applicant failed to disclose prior litigation involving claims of invalidity).

Cutsforth's reliance on Travel Caddy to argue that it was not required to disclose the 2007 Litigation or claim charts provided during that litigation is misplaced. In Travel Caddy, an invalidity claim was never formally or informally alleged in the prior litigation and therefore the Federal Circuit determined that disclosure of the prior litigation was not required. 695 F.3d at 1291. Here, however, Defendants pled that Fulmer did informally allege that the '906 and '935 Patents were invalid during the 2007 Litigation. (Countercl. ¶ 28 [Doc. No. 47].) In fact, Defendants allege that Fulmer provided Cutsforth with invalidity claim charts demonstrating why the claims in the '906 and '935 Patents were invalid in reference to prior art. (Id. ¶¶ 30–32.) Therefore, the Court finds that Defendants have adequately pled that Cutsforth withheld material information from the USPTO when it

15

failed to disclose the 2007 Litigation and the claim charts.

The Court also finds that Defendants have adequately pled allegations that lead the Court to reasonably infer that Cutsforth did not disclose the existence of the 2007 Litigation or the claim charts with the specific intent to deceive the USPTO.  Defendants allege in their Counterclaim that after Cutsforth "received the invalidity claim charts from the 2007 Litigation, [it was] aware of specific and detailed challenges to the validity of their family of patents."  (Id. ¶ 94.)  Defendants further allege that these challenges caused Cutsforth to dismiss the 2007 Litigation.  (Id. ¶ 95.)  Defendants assert that "[r]ather than informing the USPTO of the material challenges, [Cutsforth] merely submitted the prior art that was the basis of the challenges without ever informing the USPTO that those pieces of prior art had been the subject of litigation, and specifically, the bases for invalidity challenges during litigation."  (Id. ¶ 96.)  They contend that Cutsforth deliberately withheld this information "in hopes that the USPTO would issue patents with file histories that would include the prior art from the claim charts and that the USPTO would issue the patents without realizing the detailed arguments included in the 2007 Litigation and the invalidity claims charts."  (Id. ¶ 97.)  Defendants further assert that Cutsforth "covered up the 2007 Litigation and the 2007 Invalidity Charts because had the USPTO known of them, it would have . . . had information at its disposal that would have kept it from allowing the Asserted Claims from issuing in the '354, '018 and '014 Patents."  (Defs.' Opp'n Mem. at 20 [Doc. No. 59].)  Accordingly, the Court determines that Defendants have plausibly alleged that Cutsforth did

not disclose the 2007 Litigation or the claim charts in an effort to deceive the USPTO.[11]

Therefore, the Court denies Cutsforth's Motion to Dismiss Defendants' Inequitable Conduct Counterclaims and Motion to Strike Defendants' Inequitable Conduct Affirmative Defenses.

### III. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Cutsforth's Motion to Dismiss Defendants' Inequitable Conduct Counterclaims and Motion to Strike Defendants Inequitable Conduct Affirmative Defenses [Doc. No. 53] are **DENIED**.


Dated: June 6, 2013						s/Susan Richard Nelson
								SUSAN RICHARD NELSON
								United States District Judge

---

[11] The Court notes that while it finds that Defendants have plausibly stated a claim for inequitable conduct, it recognizes that Cutsforth may have a strong argument that they were not allowed to disclose the claim charts from the 2007 Litigation under a confidentiality agreement between the parties. (See Engel Decl. ¶ 4, Ex. C); (Pl.'s Reply Mem. at 14–15 [Doc. No. 62].) However, these questions involve factual issues not embraced by the pleadings and therefore cannot be appropriately resolved in the context of the present Motions. Baker v. Allstate Fin. Servs., Inc., 554 F. Supp. 2d 945, 950 (D. Minn. 2008) (finding that the Court could not consider letters on a motion to dismiss because it was not embraced by the pleadings).